IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA MCKENNA,                          :
        Plaintiff,              :        CIVIL ACTION
                              :
    v.                                  :
                              :
HEALTHEASE, INC., et al.,               :        No. 10-3940
        Defendants.             :

## MEMORANDUM

Schiller, J.                                                    April 18, 2013

      Lisa McKenna worked as a fitness instructor for Healthease, Inc. ("Healthease"), a company owned by Armand Tecco. Lockheed Martin and Healthease had an agreement under which Healthease sent a fitness instructor to Lockheed Martin's King of Prussia facility. McKenna was that fitness instructor for approximately four months before she was let go, allegedly due to her age and gender. She sued Lockheed Martin, Healthease, Tecco, and Eric Mamon, a Healthease employee. Lockheed Martin, Healthease, and Tecco filed summary judgment motions. Lockheed Martin argues that the case against it cannot proceed because Lockheed Martin did not employ McKenna. Healthease and Tecco, along with Lockheed Martin contend that McKenna has failed to create a genuine issue of material fact on her discrimination claims. Finally, problems with McKenna's standing came to the attention of this Court based on her Chapter 7 bankruptcy filing. McKenna now seeks additional time to complete discovery. For the reasons that follow, the Court denies the request for additional time to complete discovery, and holds that Lockheed Martin was not McKenna's employer and that McKenna has not created a triable issue of fact on her discrimination claims. Accordingly, Defendants' motions for summary judgment are granted.

I.      **BACKGROUND**

Healthease and Lockheed Martin had a contract in which Healthease agreed to provide an onsite fitness manager for forty hours per week at Lockheed Martin's King of Prussia campus. (Lockheed Martin's Statement of Undisputed Facts [Lockheed Martin SOF] ¶¶ 1-2.) The Healthease staff member assigned to manage the fitness center was responsible for recruiting and retaining members, marketing fitness center programs, fitness programming, performing fitness assessments, supervising and monitoring exercise participants, promoting and organizing group exercise programs, developing and implementing educational programs, designing and implementing incentive programs, creating educational bulletin boards and flyers, generating monthly reports, budgeting, managing supplies, and cleaning and maintaining exercise equipment. (*Id*. ¶ 4.) Jack Eisele, Lockheed Martin's manager of special services, managed Lockheed Martin's relationship with Healthease. (*Id*. ¶ 5.) He acted as a liaison who ensured that Lockheed Martin employees benefitted from Healthease's services while Healthease upheld its end of the bargain. (*Id*.)

McKenna is a fifty-two year old female. (Am. Compl. ¶ 25.) McKenna applied for a job opening with Healthease by submitting her resume on Craigslist. (Lockheed Martin SOF ¶ 15.) Tecco and Mamon interviewed McKenna at Healthease's office. (*Id*. ¶¶ 17, 20, 23.) She did not interview with a Lockheed Martin employee. (*Id*. ¶ 27.) Mamon told McKenna that she would be running Lockheed Martin's fitness facility in King of Prussia, teaching fitness classes, and providing personal training. (*Id*. ¶¶ 21-22.) Either Tecco or Mamon offered McKenna the job and told her to meet with Patrick Rufo, a Healthease employee who worked at the King of Prussia facility, for training. (*Id*. ¶¶ 28-31.) Tecco provided McKenna with Healthease's compensation and benefits package and Mamon informed her of her salary and that she would work forty hours a week. (*Id*.

¶¶ 34-35, 37.)

McKenna started work at Lockheed Martin on September 29, 2008. (*Id*. ¶ 40.) She trained with Rufo and received Healthease's "Standards of Superior Service," which "described Healthease's expectations for its fitness manager with regard to certifications, fitness training, supervision, fitness assessments, exercising programming, communication, professional etiquette, dress code, appearance, working environment, and personal health standards." (*Id*. ¶¶ 43-44.) Healthease also set the fees for personal training. (*Id*. ¶ 48.) When Plaintiff missed a half day of work, she contacted Mamon; she did not contact anybody at Lockheed Martin. (*Id*. ¶¶ 50-51.) McKenna provided Mamon and Tecco monthly reports about her activities in the fitness center. (*Id*. ¶ 54.) Healthease paid McKenna's salary, issued her paycheck earning statements, issued her a W-2 form, enrolled her in direct deposit, and provided her with a 401(k) plan, medical and dental benefits, as well as long-term disability and life insurance, and paid her unemployment compensation insurance and payroll taxes. (*Id*. ¶¶ 55-61, 65-66.)

McKenna was terminated on January 29, 2009. (*Id*. ¶ 68.) Prior to McKenna's termination, Healthease saw a number of its clients cut back on the use of Healthease's services. (Lockheed Martin's Mot. for Summ. J. Ex. C [Tecco Decl.] ¶¶ 11-13.) In December 2008, Lockheed Martin and Healthease reached an agreement in which Lockheed Martin reduced its payment to Healthease. (*Id*. ¶ 13.) Healthease claims that it was forced to reduce its staff by one when it lost substantial income and business. (*Id*. ¶14.) Scott Dyck, who had worked with Healthease for three years, was assigned to Lockheed Martin's King of Prussia facility. (Lockheed Martin SOF ¶ 71.)

## II.      STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III.     DISCUSSION

Before addressing the merits of Plaintiff's discrimination claims, the Court must discuss Plaintiff's response to Defendants' summary judgment motions, as well as McKenna's ability to bring this lawsuit in her own name.

4

### A.        Rule 56(d) and Standing

#### 1.        Background

This Court previously considered McKenna's standing to bring this cause of action. On November 9, 2012, Lockheed Martin filed a motion to dismiss Plaintiff's case arguing that she lacked standing because the real party in interest was the bankruptcy trustee of McKenna's Chapter 7 bankruptcy. On November 15, 2012, Healthease and Tecco filed a similar motion. On December 5, 2012, counsel for McKenna wrote to the Court about a "new and important development that the Court should be apprised of." (Letter to Court, *McKenna v. Healthease*, Civ. A. No. 10-3940 (E.D. Pa. Dec. 5, 2012), ECF No. 53.) According to the letter, the bankruptcy trustee was going to seek permission from the bankruptcy court to pursue McKenna's discrimination claims. The Court was also told that "[a] letter from the trustee directly to Your Honor will be forthcoming shortly." (*Id.*) The letter never arrived. Tired of this case languishing, the Court issued an opinion in which it concluded that McKenna lacked standing to bring her claims for monetary damages because her discrimination claims properly belonged to her bankruptcy estate, even though they existed pre-petition. *McKenna v. Healthease, Inc.*, Civ. A. No. 10-3940, 2013 WL 159379 (E.D. Pa. Jan. 15, 2013). When she filed for Chapter 7 bankruptcy protection, McKenna failed to list her interest in her discrimination charge as a claim or contend that the charge was exempt. Furthermore, when the bankruptcy trustee asked McKenna if she had listed all of her assets and debts, she responded affirmatively. (Req. of Former Bankr. Trustee for Order Not Dismissing Pending Litig. Ex. 1 [Mot. for Order Reopening Bankr.] at 2-3, *McKenna v. Healthease*, Civ. A. No. 10-3940 (E.D. Pa. Feb. 25, 2013), ECF No. 59.) This Court held that McKenna lacked standing to bring her discrimination claims because a legal claim that is not scheduled or otherwise administered by the time the

5

bankruptcy is closed "forever remains property of the estate, and the trustee remains the real party in interest." *Matthews v. Potter*, 316 F. App'x 518, 521 (7th Cir. 2009); *see also Schafer v. Decision One Mortg. Corp.*, Civ. A. No. 08-5653, 2009 WL 1532048, at *4 (E.D. Pa. May 29, 2009) ("If a debtor fails to exempt or schedule a claim, and the trustee does not abandon the claim, the claim remains the property of the estate."). However, even though McKenna lacked standing, the Court elected not to dismiss her claim at that time "[b]ecause outright dismissal of her case would be a harsh sanction." *McKenna*, 2013 WL 159379, at *3. Accordingly, the Court issued an Order that "Plaintiff shall have until **Monday, February 25, 2013** to reopen her bankruptcy and substitute the bankruptcy trustee for herself as Plaintiff in this litigation." (Order, *McKenna v. Healthease*, Civ. A. No. 10-3940 (E.D. Pa. Jan. 15, 2013), ECF No. 58.) Furthermore, the Court stated that "[f]ailure to substitute the bankruptcy trustee for Plaintiff will result in the dismissal of all claims against Defendants except claims for injunctive relief." (*Id.*)

On February 25, 2013, the bankruptcy trustee filed a motion to reopen the bankruptcy, as well as notice that any parties wishing to object had fourteen days to file and serve written objections. (Mot. and Notice to Reopen Chapter 7 Case, *In re McKenna, Debtor*, Bankr. A. No. 09-16886 (Bankr. C.D. Cal. Feb. 25, 2013), ECF Nos. 12 & 13.) The bankruptcy court issued an order that granted the motion and reopened McKenna's Chapter 7 bankruptcy. To date, however, McKenna remains the Plaintiff in this case because nobody has moved to be substituted in as the proper party in interest.

Healthease and Tecco filed a motion for summary judgment on March 7, 2013, and Lockheed Martin filed a motion for summary judgment on March 8, 2013. Plaintiff sought—and received—an extension of time to respond to the motions. As she received an extension, the Court assumed that

counsel for McKenna would supply a substantive response to Defendants' summary judgment motions. Instead, the Court received a request for additional discovery "she was denied during the pendency of Defendants' now-resolved motions to dismiss this matter due to its non-inclusion in Plaintiff's prior bankruptcy filing." (Pl.'s Omnibus Resp. to the Mot. for Summ. J. of Defs.' and Decl. Requesting Disc. Pursuant to Fed. R. Civ. P. 56(d) [Pl.'s Resp.] at 1.)

     2.     *Rule 56(d)*

Plaintiff brings her request under Rule 56(d) of the Federal Rules of Civil Procedure. Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

According to Plaintiff's response and the exhibits accompanying it, prior to the discovery deadline Plaintiff sought to depose several "essential witnesses," including Eisele, Tecco, Mamon, and Dyck. (Pl.'s Resp. ¶¶ 5-6.) Counsel for Lockheed Martin responded that the plaintiff's identity should be resolved before proceeding with discovery. (*Id*. ¶ 7.) There was some back and forth between counsel for the parties but ultimately, according to Plaintiff's lawyer, "[t]he issues [counsel for Lockheed Martin] sought to have 'sorted out' were not resolved until February 25, 2013, well after the discovery deadline." (*Id*. ¶¶ 8-14.)

There are numerous problems with McKenna's counsel's recounting of the events. First, the parties were never relieved of their discovery obligations. The parties were expected to move forward with the case and comply with this Court's scheduling order. Second, as best as this Court can discern, the individuals Plaintiff seeks to depose needed to be deposed regardless of the outcome

7

of the standing issue. Thus, Plaintiff's counsel should have responded that there was no need to delay depositions that needed to go forward regardless of the decision on standing. Third, the relevant witnesses were known to both parties from an early date. Indeed, Plaintiff was deposed prior to the close of discovery and the individuals Plaintiff now seeks to depose should have been as well. Fourth, it appears as though counsel for Lockheed Martin provided some push back on deposing individuals until the issue of Plaintiff's standing was handled. As this Court's policies and procedures make clear, Plaintiff's recourse was to seek intervention from the Court to ensure that discovery was completed. It was not to capitulate in the hopes that the Court would grant Plaintiff even more time to ask questions that should have been answered years ago. Furthermore, Lockheed Martin did not refuse to produce these witnesses, but merely suggested waiting until another legal issue was resolved. Plaintiff's counsel voiced no objection to Lockheed Martin's lawyer, despite an awareness of the impending discovery deadline.[1] Though Plaintiff's counsel wrote to opposing counsel in December 2012 seeking to schedule depositions prior to the close of discovery in February 2013, at no point did Plaintiff's counsel insist that they be completed prior to the close of discovery or alert the Court to this important issue. Additionally, some of the witnesses counsel for Plaintiff wanted to depose at a later date were not even represented by counsel for Lockheed Martin. Thus, a statement from Lockheed Martin's lawyer about the availability of witnesses it does not control should not deter Plaintiff's counsel from pressing forward.

McKenna's motion suffers from several flaws. First, it is legally deficient. A party seeking

_____

[1] It appears as though McKenna's lawyers left the task of scheduling depositions to the firm office manager/paralegal. While the Court has no issue with delegating certain tasks, the buck stops with the lawyers. It was the obligation of McKenna's lawyers to ensure they completed discovery on time and notified the Court of any obstacles to doing so.

additional discovery in response to a summary judgment motion must include an affidavit specifying "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Pa. Dep't of Public Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012); *see also Superior Offshore Int'l, Inc. v. Bristow Grp.*, 490 F. App'x 492, 501 (3d Cir. 2012). Failure to include the affidavit is grounds for denying the motion. *See Sebelius*, 674 F.3d at 157; *Chips Plus, Inc. v. Fed. Express Corp.*, 281 F. Supp. 2d 758, 766 (E.D. Pa. 2003).

Plaintiff's response fails to include an affidavit or declaration specifying what particular discovery she seeks and how such discovery would preclude summary judgment; the request for additional discovery is therefore denied. Plaintiff entitled her motion for additional discovery as an "Omnibus Response . . . And Declaration Requesting Discovery Pursuant to Fed. R. Civ. P. 56(d)." No declaration or affidavit is included, however. The filing contains no sworn statements and fails to comply with 28 U.S.C. § 1746, relating to unsworn declarations under penalty of perjury.

Furthermore, the reasons for seeking additional discovery included in the motion are insufficient for the Court to grant the request. The 56(d) motion points out that the witnesses have "personal knowledge of the facts relating to Plaintiff's case, including her employment with Defendants and the wrongful conduct at issue in her Complaint." (Pl.'s Resp. ¶ 16.) This statement is not particularly helpful to the Court because the Court would expect that all witnesses in the matter have personal knowledge of the facts underlying Plaintiff's claim or counsel would not waste time and money deposing them. *See Speth v. Goode*, Civ. A. No. 95-264, 2012 WL 3277105, at *7-10 (D.N.J. Aug. 9, 2012) (rejecting numerous requests for additional discovery because Rule 56(d) declaration lacked specificity). Nonetheless, the excuse that discovery was not completed simply because depositions were not scheduled is not a valid reason to further delay resolution of this case.

9

Furthermore, the parties have had ample time to conduct discovery and the lack of diligence in this matter is reason enough to deny the request for additional time for discovery. *See In re Asbestos Prods. Liab. Litig.*, Civ. A. No. 09-69125, 2011 WL 1539883, at *2 (E.D. Pa. Feb. 22, 2011); *see also Fenter v. Kraft Foods Global, Inc.*, Civ. A. No. 11-4916, 2012 WL 5586327, at *5 (E.D. Pa. Nov. 14, 2012) ("Since Plaintiff was given ample time and opportunity to conduct discovery in this case, but failed to do so, this situation does not warrant an extension of time under Rule 56(d)."). Indeed, this case is almost three years old—a period approximately nine times as long as McKenna's tenure at Healthease—yet Plaintiff still seeks additional discovery of witnesses previously identified. Therefore, this Court will rule on the summary judgment motions before it based on the record before it.

> 3.  *Standing*

As for the merits of Defendants' standing argument, this Court previously informed Plaintiff that the ball was in her court to move this matter along. She dropped the ball. This Court previously provided Plaintiff until February 25, 2013 to reopen her bankruptcy and substitute the bankruptcy trustee in this litigation. Plaintiff merely moved to reopen on February 25, 2013, virtually guaranteeing that she would not be able to move in this Court to substitute the trustee as the plaintiff here. The Court uncovered that the bankruptcy court in the Central District of California entered an order to open McKenna's bankruptcy. For some reason, counsel for Plaintiff elected not to inform the Court of that development. More perplexing, Plaintiff still has not moved to substitute the appropriate party in this action as required by Federal Rule of Civil Procedure 17. *See* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). Therefore, as of the date of this Memorandum, and almost three years after this litigation commenced, the proper

party still is not before this Court. For some reason, Plaintiff's counsel was unable to discover that McKenna had filed for bankruptcy and had never listed her discrimination claims as part of her estate, thereby creating a standing problem. With her claims seemingly hanging by a thread due to her obvious lack of standing, the Court afforded McKenna a chance to finally substitute the proper party into this litigation. Even that could not spur Plaintiff to proceed with celerity. Instead, the bankruptcy trustee waited until the day by which this Court had ordered Plaintiff to "reopen her bankruptcy" to even petition the bankruptcy court to reopen the proceedings, thereby ensuring that the bankruptcy would not be reopened by the date this Court had ordered.[2] The Court therefore will grant summary judgment because Plaintiff lacks standing to bring this action.

McKenna lacks standing to bring her claims for damages in her own name. However, as this Court previously noted, she can bring claims for injunctive relief in her own name. *See Matthews*, 316 F. App'x at 523-24 (permitting claim for injunctive relief of reinstatement in discrimination case to proceed because such claims were "of no value to her bankruptcy estate"). Accordingly, it is necessary to discuss the merits of the discrimination claims.

**B.    Discrimination Claims**

*1.    Joint employer*

Title VII prevents "employers" from discriminating against individuals in the hiring and firing of employees, as well as discriminating against them "with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

---

[2] The Court is aware that the decision whether to open the bankruptcy case is left to the bankruptcy court, not the trustee. Nonetheless, the trustee waited over five weeks after this Court's January 15, 2013 Order to seek to reopen the bankruptcy and almost twelve weeks from the date of McKenna's lawyer's letter to the Court stating that the trustee was going to seek to reopen the bankruptcy.

national origin." 42 U.S.C. § 2000e-2(a). Similarly, the Age Discrimination in Employment Act

("ADEA") prohibits discrimination by an employer based on age. 29 U.S.C. § 623. Thus, under Title

VII, the ADEA, and the Pennsylvania Human Relations Act ("PHRA"), only an employer may be

liable. *Lewis v. Vollmer of Am.*, Civ. A. No. 05-1632, 2008 WL 355607, at *2 (W.D. Pa. Feb. 7,

2008).

An "employer" is "a person engaged in an industry affecting commerce who has fifteen or

more employees for each working day in each of twenty or more calendar weeks in the current or

preceding calendar year, and any agent of such a person."[3] 42 U.S.C. § 2000e(b). An "employee" is

defined as "an individual employed by an employer." 42 U.S.C. § 2000e(f); 29 U.S.C. § 630(f).

McKenna worked for Healthease. Lockheed Martin and McKenna dispute whether she was

also an employee of Lockheed Martin. Thus, Lockheed Martin can be liable to McKenna only under

a joint employer theory of liability. *See Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997).

Liability as a joint employer may arise if "two entities exercise significant control over the same

employees." *Id.* (citing *NLRB v. Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1123 (3d Cir. 1982)).

In evaluating whether a joint employer relationship exists, courts consider: (1) authority to hire and

fire employees, promulgate work rules and assignments, and set conditions of employment, including

compensation, benefits, and hours; (2) day-to-day supervision of employees, including employee

discipline; and (3) control of employee records, including payroll, insurance, taxes, and the like.

*Cella v. Villanova Univ.*, Civ. A. No. 01-7181, 2003 WL 329147, at *7 (E.D. Pa. Feb. 12, 2003).

These factors are not exhaustive; the court must consider the entire employment situation and

---

[3] The ADEA employs a similar definition of "employer," but requires the employer to
have twenty or more employees. 29 U.S.C. § 630(b).

economic realities of the employment relationship. *In re Enter. Rent-a-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012). A court may also consider the beliefs and expectations of the parties regarding their relationship. *Myers v. Garfield & Johnson Enters., Inc.*, 679 F. Supp. 2d 598, 608 (E.D. Pa. 2010). At summary judgment, if no reasonable juror could conclude a joint employer relationship existed, the defendant is entitled to summary judgment, even if some of the factors do not favor that defendant. *Enter. Rent-A-Car*, 683 F.3d at 471.

Lockheed Martin was not an employer of McKenna. It played no role in hiring or terminating her. (Lockheed Martin Mot. for Summ. J. Ex. A [Eisele Decl.] ¶ 11.) Lockheed Martin did not place any conditions on her employment, nor did it set her schedule or evaluate her performance. (*Id*. ¶¶ 12-13.) Although McKenna met with Eisele, a Lockheed Martin employee, to discuss certain activities on which she worked, those activities were items Healthease agreed to perform based on its contract with Lockheed Martin. (*Id*. ¶ 18.) It did not create a joint employer relationship between an agent of Healthease and its customer. Lockheed Martin did not play a role in McKenna's compensation or benefits. (*Id*. ¶ 14.) She was trained by Healthease employees and obligated to follow the policies and procedures of Healthease. (Lockheed SOF ¶¶ 29-31, 41-46.) When absent from work, McKenna contacted a Healthease employee. (*Id*. ¶¶ 50-51.) Finally, Healthease was responsible for McKenna's benefits, unemployment compensation insurance, payroll taxes, paperwork, paychecks, and reports. (*Id*. ¶¶ 60, 65-67.)

Healthease had a contract with Lockheed Martin whereby it agreed to send one of its employees to a Lockheed Martin facility to conduct exercise classes. That did not render that individual an employee of Lockheed Martin. Therefore, Lockheed Martin is entitled to summary judgment because it did not employ McKenna. However, even if Lockheed Martin employed

McKenna, it would still be entitled to summary judgment. Furthermore, the Court must continue its analysis because there is no dispute that Healthease employed McKenna.

2.    *McDonnell Douglas test*

a.    *Prima facie case*

The Court examines McKenna's ADEA, and Title VII, and PHRA claims under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Burton v. Teleflex Inc.*, 707 F.3d 417, 425-26 (3d Cir. 2013); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 408 (3d Cir. 1999) (noting that race discrimination claims brought under PHRA are analyzed using *McDonnell Douglas* framework); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (noting that courts generally apply ADEA and PHRA in like manner). Plaintiff must first make out a prima facie case of discrimination. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006). *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999). At the summary judgment stage, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case." *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001) (alteration in original).

To establish a prima facie case for age discrimination under the ADEA a plaintiff must allege that: (1) she is over 40 years old; (2) she is qualified for the position; (3) she suffered from an adverse employment decision; and (4) her replacement was sufficiently younger to permit a reasonable inference of age discrimination. *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006). The plaintiff must prove by a preponderance of the evidence that age was a but for cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

To state a prima facie case for gender discrimination, the plaintiff must: (1) be a member of

14

a protected class; (2) be qualified for the position; and (3) suffer an adverse employment decision "under circumstances that give rise to an inference of unlawful discrimination." *Tx. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Healthease and Lockheed Martin assert that McKenna has failed to make out a prima facie case for age or gender discrimination. The Court agrees. The requirements of a prima facie case are flexible; indeed, in a gender discrimination case, the plaintiff can make out a prima facie case even if he or she was not replaced by someone of the opposite gender. *Pivirotto*, 191 F.3d at 357. With respect to her age discrimination claim, "to present a prima facie case raising an inference of age discrimination in a reduction in force situation, the plaintiff must show, as part of the fourth element, that the employer retained someone similarly situated to him who was sufficiently younger." *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 250 (3d Cir. 2002). To be deemed similarly situated, the comparator must be roughly equivalent to the person in question. *Gazarov v. Diocese of Erie*, 80 F. App'x 202, 205 (3d Cir. 2003).

To satisfy her burden, McKenna points to Dyck, a thirty year old male who took over McKenna's position at Lockheed Martin's King of Prussia facility. A plaintiff's burden at this stage is "minimal." *See Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir. 1995). Nonetheless, the only evidence Plaintiff has put before this Court is that her position was filled by a younger male. Indeed, to conclude she established a prima facie case given the paucity of evidence would render the initial prima facie case non existent. Dyck is not similarly situated to McKenna. *See Dawson v. Harran*, Civ. A. No. 08-7, 2009 WL 2431343, at *6 (E.D. Pa. Aug. 6, 2009) (concluding that co-workers with differing levels of experience are "not similarly situated to plaintiff"); *see also Parsia v. Allied Tube & Conduit Corp.*, Civ. A. No. 07-2436, 2009 WL 750191, at *10 (E.D. Pa. Mar. 19, 2009)

(concluding that employee who had been employed for a "vastly longer time period" was not a valid comparator). Here, Dyck had over three years of corporate fitness experience—McKenna had none —and had more seniority than McKenna, who "had the least seniority of all Healthease, Inc. employees." (Tecco Decl. ¶ 9.) Thus, a reasonable factfinder is left with no basis to make an inference of gender or age discrimination.

*b.*      *Pretext*

Even if McKenna had satisfied her burden to put forth a prima facie case, Defendants are entitled to summary judgment. If the plaintiff makes a prima facie case, the burden of production shift to the defendant to provide a legitimate non-discriminatory reason for the adverse employment action. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 465 (3d Cir. 2005). This is a relatively light burden that is satisfied upon evidence, which, if true, would permit a finding that the adverse employment action was taken for a non-discriminatory reason. *Burton*, 707 F.3d at 426. If the defendant makes the necessary showing, the burden shifts back to the plaintiff to demonstrate that the reason provided by the employer is a pretext for discrimination. *Id.* "The plaintiff must make this showing of pretext to defeat a motion for summary judgment." *Id.* (citing *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008)). The plaintiff can demonstrate pretext through evidence from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). If the plaintiff attacks the employer's credibility regarding its proffered reason for the adverse employment action, the plaintiff's evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a

16

reasonable factfinder could rationally find them unworthy of credence." *Id*. at 765 (citations omitted).

Healthease has provided a legitimate nondiscriminatory reason for McKenna's dismissal. Healthease claims that in January of 2009, it lost substantial business and income when several clients informed it that they would be reducing their payments to Healthease. (Tecco Decl. ¶¶ 11-14.) For example, Lockheed Martin and Healthease reached an agreement in which Lockheed Martin reduced its payments to Healthease by $12,360 a year for two years. (*Id*. ¶ 13.) The reductions resulted in a total loss of $95,820 a year in business for Healthease and therefore, Healthease was forced to cut its staff by one "in an attempt to control business expenses." (*Id*. ¶ 14.) This is certainly a legitimate, non-discriminatory reason to fire McKenna.

Having shifted the burden of production back to McKenna to demonstrate pretext, she is unable to point to any evidence that suggests any implausibility or weakness in the decision to fire her. To support her pretext argument, McKenna makes much of a statement from Eisele that, "[i]f you leave, I want a guy just like Dan in there." (Lockheed Martin Mot. for Summ. J. Ex. B [McKenna Dep.] at 144.) McKenna considered that to be a gender-based comment because she is "not a guy." (*Id*. at 145.) This statement, even considered with the totality of the circumstances, is insufficient to demonstrate pretext. For one, when McKenna inquired about the meaning of the comment, Eisele told her that he meant somebody who got their reports in on time. (*Id*. at 143.) Second, and mindful of the requirement that this Court may not engage in credibility determinations at this point, the Court does not see how the simple use of the word "guy" equates with Eisele's wish to have a man in McKenna's role. Third, the statement by Eisele begins with the introduction, "if you leave," hardly an indication that McKenna's age or gender would play any role should she no longer be employed by Healthease. Finally, Eisele played no role in McKenna's termination, nor is

there evidence that he even expressed his wishes to anybody at Healthease that he would prefer to have a male in McKenna's job. Thus, even if the Court credits Eisele's statement with the nefarious undertones McKenna attaches to it, Eisele's words are irrelevant because there is no evidence that they played any role in her termination or were ever communicated to any individual who played a role in the decision to terminate McKenna. Stray comments made by an individual who is not a decision maker are insufficient to raise an inference of discrimination by an employer. *See Carilli v. Mut. of Omaha Ins. Co.*, 67 F. App'x 133, 135 (3d Cir. 2003); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1085 (3d Cir. 1995).

Finally, to support her claims of discrimination, McKenna claims she was lied to, that Tecco ignored her, and that she was not invited to the Healthease Christmas party. Assuming the truth of these statements, they fail to raise a genuine issue of material fact that McKenna was discriminated against based on her age or her gender. She points to no lies or inconsistencies that would call into question Healthease's decision to terminate her for economic reasons coupled with her short tenure at Healthease.

As for the PHRA aiding and abetting claims brought against Tecco and Mamon, they fail because the claims against Lockheed Martin and Healthease fail. *See Reganick v. Sw. Veterans' Ctr.*, Civ. A. No. 06-1267, 2008 WL 768423, at *8 (W.D. Pa. Mar. 20, 2008); *see also Kaniuka v. Good Shepherd Home*, Civ. A. No. 05-2917, 2006 WL 2380387, at *10 (E.D. Pa. Aug. 15, 2006).

IV.    **CONCLUSION**

The bankruptcy trustee is not before this Court and McKenna lacks standing to bring this action. Lockheed Martin was not McKenna's employer. McKenna has failed to raise a genuine issue

18

of material fact on her discrimination claims. Therefore, summary judgment is granted in favor of all Defendants. An Order consistent with this Memorandum will be docketed separately.